STATE OF INDIANA, EX REL. HAY ET AL. *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY OF BALTIMORE, MARYLAND.

[No. 13,913. Filed September 25, 1930. Rehearing denied December 12, 1930.]

*S. L. Vandeveer, Espenschied & Espenshied, Thomas M. Honan, J. Ross Robertson* and *Montgomery & Montgomery,* for appellants.

*Joseph H. Iglehart, Edward P. Elsner* and *Thomas H. Branaman,* for appellee.

NICHOLS, J.—The errors relied upon for reversal in this case are that the court erred in sustaining the appellee's demurrers respectively to the amended first and to the second paragraph of relators' complaint.

The facts, so far as here involved in each of these paragraphs of complaint, are that Big Creek runs through Gibson and Posey Counties, Indiana, and empties into the Wabash River in Posey County. Relators were constructing a bridge across Big Creek in Posey County under a contract entered into on October 3, 1927, with the board of commissioners of that county, at a location known as Grafton Bridge.

There was pending in the Gibson Circuit Court a drainage petition for repair, enlargement and deepening of the channel of Big Creek. The contract for said work had been let on August 22, 1925 to the Walb Construction Company, and appellee, United States Fidelity and Guaranty Company of Baltimore, Maryland, was surety upon the bond of the Walb Construction Company. The contract of the Walb Construction Company provided, among other things, that it agreed and undertook to furnish the commissioner with a bond in the penal sum of $196,000, with surety thereon to the approval of such commissioner, and conditioned for the faithful performance of the contract as required by law in reference to contracts of this kind, and that it would pay all damages occasioned by the nonfulfillment of the contract. Specification four of the commissioners' report is as

follows: "The contractor shall be responsible for all damage which may occur to any person or property in consequence of any neglect or carelessness of said contract—or any of his employees. The contractor assumes all risks arising from the nature of the work, from any unforeseen or unusual difficulties, or from the action of the elements. All stumps or trees wholly or in part in the channel of the ditch shall be grubbed and removed clear of the berms and spoil banks and if possible the same shall be burned. All underbrush, sprouts, logs and debris on so much of the right of way as shall be included within the channel, berms and spoil banks shall be cut, piled and burned. All overhanging trees liable to become obstructions to the drainage, shall likewise be cut, piled and burned, even if they do not stand within the limits of the right of way above described to be cleared. The entire right of way of the Blackburn Lateral shall be cleared and the debris burned as above described."

The bond upon which appellee was surety, and which is sued upon, was in the penal sum of $196,000, and conditioned that said Walb Construction Company should fully and faithfully perform the contract and pay all damages that might occur by its nonfulfillment thereof.

The said Walb Construction Company entered upon the performance of its contract by deepening said Big Creek from its mouth, the Wabash River, to a point above where said Grafton Bridge was to be constructed. After said drainage work had been performed as aforesaid to a place above Grafton Bridge, relators began the construction of the abutment of the bridge, and set up in Big Creek piers, called "false work" for the temporary support of said bridge until the parts thereof could be joined together and placed on said piers and across said Big Creek. From a point in said Big Creek about three-fourths of a mile up stream, and east of the location of

said bridge, and extending from said point east up stream for a distance of more than five miles, there were stumps, trees, underbrush, sprouts, logs and debris. The Walb Construction Company, in violation of its said bond and contract, did not remove all stumps and trees wholly or partly in the channel of said Big Creek, and did not cut, pile and burn all underbrush, sprouts, logs and debris on so much of the right of way as was included within the channel, berms and spoil bank, nor any of said underbrush, sprouts, logs and debris upon and along said right of way, but removed said logs, sprouts, underbrush and debris by depositing the same in the stream of water flowing in said channel to be carried down said channel to the mouth of said Big Creek. On or about December 6, 1927, at the time said bridge was in the process of construction, and after said trees, underbrush, sprouts, etc., had been so placed in the channel of said Big Creek, the water flowing down the channel thereof washed and carried the trees, underbrush, logs and debris down said stream against the temporary piers of said bridge with great impact and pressure, and said logs, sprouts, debris, etc., impounded the water and the overflow of said water against said piers caused the piers and bridge work to fall into the channel of Big Creek and to be carried down stream, a great part of which relators were unable to recover, and such material as was recovered was injured to such an extent that it was unfit to use in said bridge and of no use, to relators' damage in the sum of $4,000, for which they ask damage.

Relators were not parties to the contract and bond here involved, and it is well settled that they can have no right of action thereon unless it clearly appears that it was the intention of the parties thereto that they should have such right. The provisions of the statute under which relators claim their right of action are thus stated in §6182 Burns 1926: "Pro-

vided, further, that any person or party who shall have successfully bid for the whole or any part of said work, shall, when the same is so set off to him, enter into a contract with the person in charge to perform such part of such work and give bond and [with] surety, and in a proper penalty, for the performance of his contract, and that he will pay all damages occasioned by his nonfulfillment of his said contract, which may be recovered in any court of competent jurisdiction. And in case any person or party whose lands are assessed for the construction of such ditch shall be damaged by reason of such default and failure of such contractor to complete the work within the time limited, such contractor so in default shall be liable on his bond to the person or party so damaged to the full amount of such damages, which may be recovered in any court of competent jurisdiction in a suit or an action on such bond by the State of Indiana on the relation of the person or party damaged, for the use of such person or party injured or damaged, and the amount recovered shall be paid to the party injured, and such superintendent of construction may bring suit on such bond in any court of competent jurisdiction to recover any increased costs, expense or damages of or to the work by reason of such failure of such contractor, and the amount recovered shall be and become a part of the funds in the hands of such superintendent for the construction of such work the same as assessments."

Relators contend that the provision of the statute that the contractor will pay all damages occasioned by the nonfulfillment of his contract is sufficient to give them the right of action for the damages that they have suffered. But, that such a construction is too broad to include relators is manifest, for it is evidenced that a right of action is given only to two classes of persons—parties whose lands are assessed for the construction, and the superintendent of con-

struction. Relators belong to neither of these classes. We recognize the general rule that a third party for whose benefit contracts were made may have a right of action thereon, but, in order that such action may be maintained, it must clearly appear that the contract was made for his benefit, as its object, and he must be the party intended to be benefited. *Simson* v. *Brown* (1877), 68 N. Y. 355. As stated in *Reed* v. *Adams, etc., Wire Works* (1914), 57 Ind. App. 259, 106 N. E. 882: "It may appear that the performance of the terms and stipulations of a contract as between the parties to it would be beneficial to a third party, but this of itself is not enough to confer upon such third party a right to maintain an action based on such contract. It must further appear that it was the intention of one of the parties to require that certain of the terms and agreements entered into should be performed by the other party to the contract in favor of such third person and for his benefit; and that the other party to the contract intended to assume the obligation thus imposed." It does not so appear here. On the contrary, it does not appear that the bridge was even contemplated at the time the contract and bond in suit were executed. Such execution was on August 22, 1925, and the work contracted for was completed at the place where the bridge was located before the contract for the bridge was executed. It seems clear that appellee did not, by its bond, evidence a distinct intention to benefit relators, and this it must do in order to give a right of action to them. *Irwin's Bank* v. *Fletcher, etc., Trust Co., Rec.* (1924), 195 Ind. 669, 692, 145 N. E. 869, 146 N. E. 909.

Authorities are cited to the effect that there is a liability for damages resulting from negligence in the prosecution of the work, but such damages, even if they were recoverable, and we hold that, under the facts herein, they were not, could only be

recovered against the Walb Construction Company for its negligence, and not against appellee under the contract and bond, executed pursuant to the statute. *State, ex rel.,* v. *Jacobs* (1924), 194 Ind. 327, 332, 142 N. E. 715.

The court did not err in its rulings on the demurrers. Judgment affirmed.